**JOHNSON v. MANGUM et ux.   (No. 6479.)**

(Court of Civil Appeals of Texas. San Antonio. Jan. 12, 1921. Rehearing Denied Feb. 16, 1921.)

1. **Appeal and error �köm756—Typewritten brief is "written," and must be limited to 15 pages.**

A typewritten brief is "written" as distinguished from "printed," and must be limited in its number of pages to 15, under Rev. St. art. 1614, and Rules of the Courts of Civil Appeals, No. 37 (149 S. W. x).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Write—Writing.]

2. **Appeal and error �köm640—Though transcript violated rules as to form, appeal not dismissed, appellee not questioning accuracy.**

Court of Civil Appeals refrained from dismissing the appeal where the transcript of the record, not in compliance with Rules for the District and County Courts, No. 90 (142 S. W. xxiii), has its sheets mutilated and fastened together with gem paper clips, running through the perforations, making the use of any sort of seal impossible; appellee not questioning correctness or completeness of transcript.

3. **Specific performance ⊚97(1)—Buyer who did not perform not entitled to specific performance.**

Where the buyer of land obligated himself orally to pay $76 into bank to the seller's credit, to pay the seller's $200 note, with accrued interest, to the bank and legally to assume payment of the seller's $700 vendor's lien notes to a third person, with unpaid accrued interest, and to pay taxes, but thereafter made no arrangement with the bank or with the third person by which he could be bound for paying or carrying their notes, did not pay in the $76, and allowed the taxes to go delinquent, he is not entitled to specific performance of the contract from the seller and his wife.

4. **Appeal and error ⊚1058(1)—Exclusion of testimony harmless, where like testimony admitted.**

Error in the exclusion of testimony was rendered harmless by the repeated admission of like testimony during trial.

5. **Specific performance ⊚106(1) — Court properly exercised discretion in declining to permit bank to be impleaded as defendant.**

In suit for specific performance of contract to sell and convey land in return for plaintiff buyer's agreement to pay $76 into bank for defendant seller, and to pay the seller's $200 note held by the bank, the bank could not have recovered of plaintiff for the $76, nor required plaintiff to pay the note and the trial court properly exercised its discretion in declining to require or permit the bank to be impleaded as a defendant.

Appeal from District Court, Atascosa County; Covey C. Thomas, Judge.

Action by N. J. Johnson against M. M. Mangum and wife. From judgment for defendants, plaintiff appeals. Affirmed.

R. R. Smith, J. R. Garnand, and Nat L. Hardy, all of Jourdanton, for appellant.

W. J. Bowen and Frank H. Burmeister, both of Jourdanton, for appellees.

SMITH, J. N. J. Johnson brought this action against M. M. Mangum and wife, Eva Mangum, to recover of them the title to and possession of 160 acres of land in Atascosa county, described as the Fannie Dunn preemption No. 1010, and to require the Mangums to deliver to him a deed, theretofore executed by them, to said land. In response to a peremptory instruction by the trial court, there was a jury verdict in favor of the Mangums, and judgment was entered accordingly. Johnson brings this appeal.

By calling attention to the number of pages in appellant's "written" brief, and to the physical condition of the transcript of the record, appellee has invited us to strike out the brief and dismiss the appeal.

[1] The brief is typewritten, which means that it is "written" as distinguished from "printed" (Waterman v. Holmes, 161 S. W. 70), and contains 34 pages. Both the statutes (Rev. St. art. 1614) and rules (Rule 37 [149 S. W. x]) limit the number of pages in a·written brief to 15.

[2] The condition of the transcript of the record is extremely regrettable. Rule 90 (142 S. W. xxiii) for district and county courts requires that the sheets of the transcript be not mutilated, and that they be fastened together with "tape, ribbon or something of the kind," and that the tie of the tape or ribbon be "sealed over" with the seal of the court. Here the sheets are mutilated. In lieu of the tape with which they seem to have been fastened together originally, a couple of "gem" paper clips have been run through the perforations in the sheets and loosely hung together. This sort of contrivance makes the use of any sort of seal impossible, of course, and hence the transcript is not in any way sealed, and could have been

and could yet be altered, reduced, or enlarged at will by any person through whose hands it might pass.

The violation of the rules, both as to the brief and as to the transcript, is not only definite and material in both instances, but is flagrant in the latter, and it is with extreme reluctance that we have refrained from dismissing the appeal on that account. Inasmuch, .however, as appellee does not question the correctness or completeness of the transcript in its mutilated and disheveled state, and in the absence of a definite motion to dismiss, seasonably filed, we will retain the case and dispose of it on its merits. We add, in justice to counsel, that we are quite convinced that the condition of the transcript is not due to any design, but rather to carelessness in its preparation, binding, or subsequent handling. If there existed any suspicion that the record had been tampered with, or if appellee had questioned its accuracy or completeness, we would be required to, and without hesitation would, summarily dismiss the appeal. City of San Antonio v. Smith, 27 Tex. Civ. App. 327, 65 S. W. 41; Locker v. Miller, 59 Tex. 499. As to the objection to appellant's brief, we would be justified in striking it out, either upon our own motion or that of appellee. But some of the errors complained of, if errors at all, are fundamental, and must be considered and disposed of, and no purpose could be served by ignoring the brief.

There appears but little variance between the pleadings and evidence of the parties. The record clearly shows these facts:

In October, 1916, Magus Smith sold the land in controversy to Mangum, the consideration being $200 cash, and $700 in vendor's lien notes. Mangum made the $200 cash payment with money he had borrowed for that purpose from the First State Bank of Poteet, giving his note therefor and securing the same with a chattel mortgage on some of his live stock. In the early fall of 1918 Mangum and Johnson began negotiations for the sale of the land from the one to the other. These negotiations culminated about November 1st in an oral agreement by the terms of which Johnson was to take the place by reimbursing Mangum for "what he had been out" on the land. Up to that time, Mangum had paid a year's interest on the bank note and on the Smith notes, aggregating $76, and a second year's interest was about due on both obligations. The 1918 taxes had also about accrued. So, then, Johnson agreed to pay into the bank for Mangum the $76 interest the latter had paid out, to pay the $200 note at the bank and the last year's interest thereon, and to assume the Smith notes and the last year's interest thereon. He also agreed to pay the taxes for 1918, if not for the last two preceding years as well. This agreement was reached, as stated, about the 1st of No-

vember, 1918. Johnson had his attorney prepare the deed, and left it at the bank, to be called for, executed, and acknowledged by the Mangums. This was done the first part of December, and the deed was left with Williams, the bank cashier, and who was the notary taking the acknowledgments, with instructions to deliver it to Johnson when the latter had paid into the bank the $76, and had satisfied the bank for the $200 note. Johnson entered into no writing by which he became bound to pay any of these obligations. So far as the record discloses, he did nothing whatever to actually get under these obligations and relieve Mangum of them. Soon the bank demanded attention to its $200 note, then past due; Mangum was called on to, and did, arrange for its extension to January 1st. Later on, the bank again became impatient, and again Mangum was compelled to renew the note. Johnson having taken no steps to take care of this note, the bank naturally looked to Mangum, who alone was legally liable thereon. It was the same with the Smith notes. Smith grew more and more impatient for his money, and Mangum was compelled to pay all accrued interest, and arrange to extend these notes. In the same way, Mangum was compelled to pay the 1918 and other accrued taxes, although under the oral agreement Johnson was obligated to pay the 1918 taxes, at least, It is true that about the 1st of April, 1919, Johnson mailed to Magus Smith a check for a year's interest on the Smith notes, but this check was returned because Mangum had already paid this interest, which was long past due, and had been peremptorily demanded of Mangum. About this time, Mangum, assuming from the circumstances that Johnson had abandoned the trade, declared it off, and so notified Johnson, and took and retained possession of the deed. A few days later Johnson filed this suit.

There appears to be some dispute as to the status of the deed while in the possession of Williams, the bank cashier. But. it is quite clear from the evidence that it was left with Williams to be turned over to Johnson if and when the latter paid into the bank the $76 and took care of the $200 note to the bank. Appellant contends that the deed was in effect delivered to him, but the facts clearly negative this contention. This deed seems to have been put in evidence, and yet excluded from evidence. But a copy of the deed is not shown in the record, nor are its contents otherwise shown, and therefore it cannot be considered by us in disposing of the appeal.

[3] The question now arises, Was the trial court warranted under these facts in peremptorily instructing the jury, as it did, to return a verdict in favor of the Mangums? We are of the opinion that he was. Reducing the facts to a final analysis, Johnson is here seeking simply to require of others the

specific performance of a contract, without having, himself, performed a single material obligation imposed upon him by its terms. Having reached a thorough understanding, orally expressed, with Mangum, by which he was obligated to pay $76 into the bank to Mangum's credit, to pay Mangum's $200 note, with unpaid accrued interest, to the bank, to legally assume the payment of Mangum's $700 notes to Smith, with unpaid accrued interest, and to pay the 1918 taxes on the land, Johnson seems to have forgotten the whole transaction so far as practical purposes are concerned. He made no arrangement with the bank or with Smith, by which he could be bound, for paying or carrying the notes they held; he did not pay in the $76; he allowed the taxes to go delinquent. These defaults resulted in threats of suits and foreclosure, and as Johnson had not made himself legally liable or responsible for these obligations, and as all parties continued to look to Mangum, the latter was compelled to take care of them, and did so. This situation continued for four or five months after the making of the tentative sale, when Mangum assumed and exercised the privilege of calling off the trade. In this, we think he was clearly within his rights, and hold that the trial court correctly instructed the jury to find for the Mangums. These conclusions require us to overrule appellant's first and second assignments of error, in which complaint is made of the action of the court in peremptorily instructing the jury to return a verdict for appellees.

[4] In his third assignment of error appellant complains of the action of the court in excluding the testimony of appellant, to the effect that in the presence of appellee he had orally agreed with the cashier of the Poteet bank to pay the bank the various items comprising the consideration for the land (except the Magus Smith notes), and that the cashier agreed to accept such assumption so made, and that appellee on that occasion asked appellant to agree to pay said obligations, and admitted that he owed the bank more than the amount of said obligations. This testimony seems to have been excluded upon the objection that the same was immaterial and irrelevant. An examination of the statement of facts, however, discloses that testimony similar to that set out in this assignment was admitted, most of it repeatedly, during the trial; and, even if its exclusion in the instance complained of was error, the error was thereby rendered harmless. The third assignment is overruled.

[5] Appellant complains in his fourth assignment of error of the action of the trial court in refusing to require or permit the First State Bank of Poteet to be made a party defendant to this suit, appellant's only proposition under this assignment being as follows:

"It is error for a court to deny a party plaintiff or defendant in a suit the right to make any other person who has an apparent legal interest in the subject-matter of such suit a party thereto in order that the rights of all parties may be authoritatively adjudicated, and not leave a party litigant in peril of having two judgments enforced against him for the same debt or cause of action."

We do not think that under any of the facts disclosed in the record the Poteet bank could possibly have held appellant liable to it for the debts of appellee. Certainly the bank could not have recovered of appellant for the $76 which appellant had agreed to deposit in the bank to appellee's credit, nor could it require appellant to pay appellee's note, which it held, in the absence of any written obligation on appellant's part to do so. We think the trial court correctly exercised its discretion in declining to require or permit the bank to be impleaded, especially under the circumstances of this case, which need not here be set out at length. We overrule the fourth assignment of error.

It seems that in his first amended original petition appellant, after stating his cause of action, undertook to reply to one of appellee's pleadings, setting up certain demurrers as well as special answers. On objection of appellee that the special exceptions in this pleading did not occur in due order, the trial court declined to consider them. There were two such special exceptions, but in our opinion neither was well taken. Appellant's fifth assignment of error is overruled.

Judgment affirmed.